IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROBERT FAGAN, SHAWN HAGENAH,
BRADLEY A. JENSEN, and
JOSEPH G. STEPHANI,

                Plaintiffs,                OPINION AND ORDER

v.                                        19-cv-462-wmc

SUPERIOR REFINING COMPANY LLC,

                Defendant.

Plaintiffs Robert Fagan, Shawn Hagenah, Bradley Jensen, and Joseph Stephani allege that they were injured as a result of an explosion at the Husky Superior Refinery in Superior, Wisconsin. They brought suit against Superior Refining Co., LLC ("SRC") alleging (1) negligence, (2) strict liability for "ultrahazardous activities," and (3) violation of Wis. Stat. § 101.11 (the "safe place statute"). (Dkt. #24.) SRC moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim under which relief can be granted. (Dkt. #15.) For the reasons discussed below, SRC's motion will be granted, and plaintiffs' claims are dismissed without prejudice.

ALLEGATION OF FACTS

On April 26, 2018, plaintiffs were employed as independent contractors at the Husky Superior Refinery in Superior, Wisconsin, when there was an explosion at the refinery. Plaintiffs allege that a valve in the fluid catalytic cracking unit was worn and failed, allowing a flammable mixture of oxygen and hydrocarbons to form, thus leading to the explosion. (Sec. Am. Compl. (dkt. #10) ¶¶ 7-8.) They sued SRC, the owner and

operator of the Husky Refinery, claiming that SRC failed to "observe due care," knew or should have known that the equipment was worn, failed to properly inspect and maintain the equipment in the unit, and failed to "properly train and supervise its employees in the safe maintenance and service" of the refinery. (*Id.* ¶¶ 9, 10, 12.) Plaintiffs allege that they were injured as a result of the explosion, incurring medical expenses exceeding $25,000 each, wage loss of at least $50,000 each, and loss of quality of life. (*Id.* ¶ 15.)

## OPINION

For the purpose of evaluating the sufficiency of a complaint subject to a 12(b)(6) motion, the court should accept as true all of the well-pleaded facts contained in the complaint and construe it in the light most favorable to the non-moving party. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (citing *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010)). Fed. R. Civ. P. 8(a) requires that a pleading include "(1) a short and plain statement of the grounds for the court's jurisdiction," and "(2) a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must, however, be supported by more than just legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008). It must allege sufficient facts that suggest a plausible right to relief, beyond a speculative level. *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019).

Wisconsin Statutes Chapter 102 provides the exclusive remedy for worker's compensation claims, with the exception of claims arising from affirmative acts of negligence by the employer or from ultrahazardous activities. While plaintiffs make similar claims arising from the same incident as those in *Mayr v. Husky Energy, Inc.*, Case No. 18-

cv-917-wmc, 2019 WL 4849579 (W.D. Wis. Oct. 1, 2019), unlike *Mayr*, plaintiffs' pleadings have failed to establish that their claims fall within one of the two exceptions under which they can claim damages outside of chapter 102.  Specifically, while plaintiffs have identified possible negligent acts of *omission* by SRC, they have not plausibly pled that SRC committed an *affirmative* act of negligence required by Wisconsin law.  Similarly, plaintiffs have provided no factual support for the claim that they were engaged in an ultrahazardous activity.  Unlike *Mayr*, plaintiffs have also failed to identify where and in what capacity they were working, and what made the activity ultrahazardous.  Finally, plaintiffs have also failed to demonstrate why safe place statute remedies would be available to them outside of those provided in Wis. Stat. § 102.57.  Therefore, plaintiffs' claims will be dismissed without prejudice.

**I. Federal Jurisdiction**

Three of the plaintiffs are Minnesota residents, one is a Wisconsin resident.  The defendant is a business operating in Superior, Wisconsin, but organized in Delaware and with its principal office in Ohio.  Plaintiffs also claim damages equal to or exceeding $75,000 each.  Under 28 U.S.C. § 1332 and §1391(b)(2), this court properly has jurisdiction to hear the matter.

**II. Wisconsin Worker's Compensation**

The plaintiffs were contractors working at Superior Refinery on April 26, 2018. Plaintiffs do not contest defendant's assertion that they were independent contractors and SRC was their principal employer under Wisconsin law (*see* dkt. #16, at 4; #24, at 2),

3

which would make their claims subject to Wisconsin's worker's compensation laws. Instead, they argue that the accident in question triggers two exceptions under which an employee may seek damages in tort against an employer for a workplace injury – namely, affirmative negligence and ultrahazardous (or extra-hazardous) activities.

Wisconsin Statute § 102.30(2) identifies worker's compensation as the "exclusive remedy against the employer, any other employee of the same employer and the worker's compensation insurance carrier" where the conditions of liability against an employer exist under Wis. Stat. ch. 102. As the plaintiffs and defendant both acknowledge, their relationship at the time of the incident was independent contractor and principal employer, respectively, which generally binds them to the remedies provided in Wis. Stat. ch. 102 for any workplace injuries. As the Supreme Court of Wisconsin explained in *Tatera*, although a principal employer is generally not the "direct employer" of an independent contractor,

> a principal employer should be generally protected from such tort liability because it has already assumed financial responsibility for injuries to the independent contractor's employees. That is, the contract price between the principal employer and the independent contractor is presumed to include payment for worker's compensation coverage; thus, the employee has a remedy for the injury -- worker's compensation -- for which the principal employer has indirectly paid.

*Tatera v. FMC Corp.*, 2010 WI 90, ¶¶ 16-17, 328 Wis. 2d 320, 786, N.W.2d 810 (internal citations and quotations omitted). And, "[a]s a general rule, a principal employer is not liable in tort for injuries sustained by an independent contractor's employee while he or she is performing the contracted work." *Id*. ¶ 2. Nevertheless, a plaintiff may succeed on a common law tort claim against their principal employer over a workplace injury if either of two exceptions are met: namely, (1) the employer committed an affirmative act of

4

negligence leading to the accident or (2) the employer's activity qualified as "ultrahazardous." *Id*. ¶ 2.

### A. Negligence

In their second amended complaint, plaintiffs allege that SRC used "a worn valve that failed to separate oxygen and hydrocarbons, allowing a flammable mixture to form." (Sec. Am. Compl. (dkt. #10) ¶ 7.) Further, they allege that SRC "knew or should have known that the equipment in the fluid catalytic cracking unit was worn and dangerous but had postponed proper inspection and maintenance of this equipment," and SRC failed "to properly train and supervise its employees in the safe maintenance and service of said refinery." (*Id*. ¶¶ 9, 12.) Accordingly, plaintiffs assert that the defendant's continued use of a worn valve, postponement of inspection of maintenance, and lack of training and supervision, all constitute affirmative acts of misconduct that created a new risk of harm to the plaintiffs. (Pls.' Opp'n (dkt. #24) at 4.)

The problem with these allegations, as defendant argues, is that plaintiffs have not identified any facts that plausibly assert that SRC committed an *affirmative* act of negligence. (*Id.*) A principal employer may be liable in tort for injuries to an independent contractor caused by that employer's affirmative acts of negligence. *Tatera*, 2010 WI 90, ¶ 22. Although traditional negligence liability includes acts of omission, Wisconsin requires that in order to be liable outside of worker's compensation remedies, principal employers must commit an act of *commission* that constitutes an affirmative act of negligence. *Id*. An affirmative act must involve "'active misconduct' that increases the risk of harm to an employee." *Danks v. Stock Bldg. Supply, Inc.*, 2007 WI App 8, ¶ 25, 298 Wis.

5

2d 348, 727 N.W.2d 846 (citing *Wagner v. Continental Cas. Co.*, 143 Wis. 2d 379, 388, 421 N.W.2d 835 (1988)). For better or worse, an act of omission itself does not reach the level of an affirmative act that would sustain an action against the principal employer. *Tatera*, 2010 WI 90, ¶ 22. *See also Wagner*, 143 Wis. 2d at 389.

Whether an employer committed an affirmative act of negligence is a question of law. *Estate of Thompson v. Jump River Elec. Coop.*, 225 Wis. 2d 588, 601, 593 N.W.2d 901 (1999). Moreover, Wisconsin courts have regularly held that acts of omission, without "something more," are not affirmative acts of negligence that create liability outside of the worker's compensation scheme. *See, e.g.*, *Snider v. Northern States Power Co.*, 81 Wis. 2d 224, 260 N.W.2d 260 (1977); *Wagner*, 143 Wis. 2d 379; *Danks*, 2007 WI App 8; *Tatera*, 2010 WI 90. Plaintiffs assert that SRC's alleged failure to inspect and maintain equipment at the Husky Refinery, and specifically the failure to replace a worn valve separating potentially combustible gases, were deliberate decisions that created unsafe conditions and, therefore, constituted affirmative acts of negligence. (Pls.' Opp'n (dkt. #24) 4.) They argue that SRC acts go beyond those which were dismissed by the court in *Danks*, which included (1) the suggestion of employer's driver that Danks move from his location, (2) that driver's failure to warn Danks of the danger involved in the lowering of a truss, and (3) the employer's failure to properly train its drivers in safe handling of trusses. *Danks*, 2007 WI App 8, ¶ 30. Even if true, however, an examination of Wisconsin case law reveals that defendant's acts, as described here, still fall squarely within the realm of acts of omission, not commission.

In *Danks*, the court held that the driver's conduct was at most "passive misconduct," while the company's alleged failure to train drivers was a "failure to act" qualifying as an omission, not an affirmative act of negligence. *Danks*, 2007 WI App 8, ¶¶ 33-35. In *Jump River*, the employer's years-long violations of the National Electric Safety Code, including failures to insulate support wires and conductors, failures of design which did not incorporate proper safety precautions, knowingly allowing dangerous conditions to persist for weeks, and failing to remedy or take precautions of such dangers, all still constituted passive inaction not rising to the level of affirmative acts of negligence. *Jump River*, 225 Wis. 2d at 600-01. The court held that although Jump River failed to protect its employee from harm (in that case, death by electrocution), it, too, did not commit active misconduct or create a new risk of harm. *Id.* at 601.

Here, SRC is accused of failing to properly maintain and replace equipment, including using a worn valve, which allegedly led to the explosion that harmed plaintiffs. As in *Jump River*, SRC's acts may have failed to protect plaintiffs from harm, but they were acts of omission. Thus, even if deliberate, SRC's delayed maintenance constituted passive inaction or failures to act that, by definition, were not affirmative acts of negligence. With respect to the failure to properly train employees, the *Danks* court expressly found that, too, was simply a "failure to act," not an affirmative act. Therefore, as a matter of law, plaintiffs have not pled any affirmative acts of negligence for which SRC would be liable.

### B. Ultrahazardous Activity

Plaintiffs assert that SRC is also strictly liable under the theory that work at the Husky Refinery qualifies as ultrahazardous or extra-hazardous. They state that

"Defendant's operation of the Superior Refinery is an ultrahazardous and abnormally dangerous activity posing a foreseeable and highly significant risk of harm that is not a manner of common usage." (Sec. Am. Compl. (dkt. #10) ¶ 3.) They go on to state that these activities "resulted in an explosion that severely injured Plaintiffs," and SRC is strictly liable for that harm. (*Id*. ¶ 14.) Plaintiffs also cite *dicta* from a case involving Montana state law to support their argument that liability would attach to refinery operations for injuries resulting from fire or explosion. (Pls.' Opp'n (dkt. #24) 6 (citing *Crane v. Conoco, Inc.*, 41 F.3d 547 (9th Cir. 1994)).) However, plaintiffs have so far provided only a conclusory statement of law: that operation of the Husky Refinery was an ultrahazardous activity. They have failed to plead *facts* to support that conclusion.

Certainly, the issue of whether an activity is ultrahazardous is a question of law, but it must be based on facts. *Snider v. Northern States Power Co.*, 81 Wis. 2d 224, 231 (1977). The *Snider* court, relying on the Restatement (Second) of Torts, § 413, comment b, emphasized that this exception "is limited to situations where there are special risks peculiar to the work to be done or arising of out the character or the type of place where the work is performed." *Id*. at 234. Strict liability attaches because "there is a high degree of risk in relation to the environment or a specific unreasonable risk to their parties," *Snider*, 81 Wis. 2d at 233, and "the risk of harm remains unreasonably high no matter how carefully it is undertaken," *Wagner*, 143 Wis. 2d at 392. *See also Jump River*, 225 Wis. 2d at 595.

Plaintiffs have supplied no binding legal precedent to support the conclusion that refinery operations, much less the unspecified activities in which they were engaged on

April 16, 2018, were ultrahazardous. Worse, the *Crane* court cited by plaintiffs explicitly declined to hold refinery operations ultrahazardous. *See Crane*, 41 F.3d at 550 ("Assuming, without deciding, that oil refinery operations are, as the Cranes contend, 'abnormally dangerous' . . . , we note that liability is limited . . . to the kind of harm, the possibility of which makes the activity abnormally dangerous."). Other federal district and appellate courts have also declined to generalize operations at oil refineries as ultrahazardous in terms of strict liability. *See, e.g., Flanagan v. Ethyl Corp.*, 390 F.2d 30 (3d Cir. 1968) (the work of filling an oil tank at a refinery when an explosion occurred, killing the worker, was a matter of common usage and not ultrahazardous); *Hall v. Amoco Oil Co.*, 617 F. Supp. 111, 112 (S.D. Tex. 1984) ("the Court concludes that the operation of an oil refinery in an industrial community . . . does not constitute an ultrahazardous activity."); and *Roach v. Air Liquide America, LP*, Case No. 2:12-3165, 2013 WL 3148627 (W.D. La. 2013) (painting and sandblasting tanks at a refinery was not an ultrahazardous activity).

In the absence of legal precedent, plaintiffs must provide a factual basis for the claim that: (1) the Husky Refinery operations were an ultrahazardous activity; and (2) there was no way of minimizing the risk of injury. *Anderson v. Marathon Petroleum Co.*, 801 F.2d 936, 939-40 (7th Cir. 1986). As the cases above illustrate, refinery operations generally are not considered ultrahazardous; therefore, any ultrahazardous activity determination must derive from either an unreasonable risk to the plaintiffs based upon the specific work that they were doing within the refinery, *see Snider*, 81 Wis. 2d at 233, or "a high degree of risk in relation to the environment" of their workplace that could not be minimized through precautions, *Wagner*, 143 Wis. 2d at 392. Because this determination relates to the

"special risks peculiar to the work" they were doing or the character of the workplace, plaintiffs must allege at least *some* information, beyond conclusions, about the nature of their work and what specific, unreasonable risks were present in the work environment. *See Snider*, 81 Wis. 2d at 233-34. Their pleading includes no such facts.

This case is distinguishable from the court's recent decision in Mayr, Case No. 18-cv-917-wmc, 2019 WL 4849579, which involved a similar claim involving the same incident, because Mayr pleaded specific facts related to the refinery activities leading up to the explosion, including the nature of Mayr's work at the refinery, the specific unit in which Mayr was working, the attendant considerations and dangers in working in that unit, and the findings of a federal agency that investigated the explosion. Thus, Mayr provided sufficient information regarding his role at the refinery relative to the operations involved in the explosion to survive a motion to dismiss. In contrast, the plaintiffs in this case provide no information about the actual location or nature of the work in which they were engaged on the day of the explosion (other than the refinery itself) and no facts indicating that they were exposed to or engaging in ultrahazardous activity.

Instead, plaintiffs allege that SRC deferred inspection and maintenance of the equipment in the fluid catalytic cracking unit and used a worn valve to separate oxygen and hydrocarbons, which failed and led to the explosion. The logical inference is that SRC could have prevented the harm through proper maintenance, which would possibly make the activity inherently dangerous, but would take it out of the realm of ultrahazardous. As we noted in *Mayr*, the determination of whether an activity is ultrahazardous must be based on the facts in evidence, but if there are insufficient facts to plausibly support the

10

claim, the court cannot speculate that such facts exist, however horrible the ultimate outcome, which this certainly was.

Outside of a conclusory statement that the work at the Husky Refinery was ultrahazardous, plaintiffs have again provided no factual or precedential legal support for their claim of exemption, and have, therefore, failed to state a claim upon which relief can be granted. Accordingly, plaintiffs' claim that SRC is strictly liable for harms incurred at the refinery under the theory that the work is ultrahazardous is dismissed without prejudice. Of course, should plaintiffs be able to cure this defect promptly, they may certainly move for leave to file an amended complaint that does meet this standard.

### III. Safe Place Statute

The third area where plaintiffs claim SRC is liable is for violations under the "safe place statute," Wis. Stat. § 101.11. Plaintiffs claim that SRC "carelessly and negligently" failed to "properly maintain said refinery so as to make it safe for employees and frequenters. . . and further by failing to properly train and supervise its employees in the safe maintenance and service of said refinery." (Sec. Am. Compl. (dkt. #10) ¶ 12.) Plaintiffs further allege the use of a worn valve was a structural defect in the equipment that created a dangerous condition resulting in their injury. (Pls.' Opp'n (dkt. #24) 5.) SRC argues that the alleged failure to properly maintain the equipment is an unsafe act, rather than a structural defect or unsafe condition triggering liability under § 101.11. (Def.'s Reply (dkt. #26) 6.)

Both parties are in error. The worn valve was not a structural defect, but may have created an unsafe condition, which would still violate § 101.11. However, if SRC violated

11

the safe place statute, their liability remains bounded by Wis. Stat. ch. 102, which does not create a separate cause of action for negligence under § 101.11.[1] *See Wasley v. Kosmatka*, 50 Wis. 2d 738, 743-44, 184 N.W.2d 821 (WI 1971) ("The employer must provide his employees with a safe place to work, *i.e.*, safe conditions. . . The duty imposed does not guarantee safety, thereby guaranteeing recovery for injuries; the Workmen's Compensation Act does that.").

The safe place statute requires that every employer and owner of a place of employment "shall so construct, repair or maintain such place of employment . . . as to render the same safe." Wis. Stat. § 101.11(1). The statute further requires:

> No employer shall require, permit or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall . . . fail to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and no such employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety or welfare of such employees and frequenters. . .

§ 101.11(2)(a). With respect to a safe workplace, plaintiffs essentially claim that deferred maintenance and a failure to provide proper training caused their injuries. They specifically claim that the failure to replace a worn valve created the harm. (Pls.' Opp'n (dkt. #24) 5.) Under a fair reading of the statute, therefore, SRC's postponement of inspections and maintenance and failure to replace worn equipment are not structural defects, but they

---

[1] *See* Wis. Stat. § 102.03(2) ("Where such conditions exist, the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer . . ."; Wis. Stat. § 102.57, *Violations of safety provisions, penalty* ("If injury is caused by the failure of the employer to comply with any statute, rule, or order of the department of safety and professional services, compensation and death benefits provided in this chapter shall be increased by 15 percent but the total increase may not exceed $15,000.).

12

may have created unsafe conditions.

The duty to provide a safe workplace is non-delegable. *Barrons v. J.H. Findorff & Sons, Inc.*, 89 Wis. 2d 444, 458. An owner or employer is liable both for structural defects and unsafe conditions in the workplace. *Rosario v. Acuity & Oliver Adjustment Co.*, 2007 WI App 194, ¶ 15, 304 Wis. 2d 713, 738 N.W.2d 608. A structural defect arises from the use of improper layout, materials, or construction and triggers liability with or without notice to the owner of the defect. *Id*. at 16. However, an owner or employer is liable for an "unsafe condition *only* when it had actual or constructive notice of the condition." *Id*. (emphasis added). A breach in the duty to maintain may create an unsafe condition, but what constitutes constructive notice depends upon the circumstances of each individual case. *Id*. at 17, 24.

Aside from the two exceptions discussed earlier, the worker's compensation statute provides the "exclusive remedy against the employer" for employment related injuries. The safe place statute imposes an increased standard of care against employers and provides a remedy for an employer's breach of that standard of care through Wis. Stat. § 102.57, but § 102.29 states that the only tort remedies available under the safe place statute are against third parties. *Wasley*, 50 Wis. 2d at 743-44. If worker's compensation benefits are denied, this could eventually become an issue for the courts to resolve, but not before plaintiffs have laid their claim before the appropriate state agencies. Therefore, this complaint must be dismissed without prejudice.

ORDER

IT IS ORDERED that:

1) Defendant Superior Refining Company LLC's motion to dismiss (dkt. #15) is GRANTED.

2) Plaintiffs' Fagan, Hagenah, Jensen, and Stephani's second amended complaint (dkt. #10) is dismissed without prejudice.

Entered this 8th day of July, 2020.

                        BY THE COURT:

                        /s/

                        _____
                        WILLIAM M. CONLEY
                        District Judge